T.C. Summary Opinion 2009-22

UNITED STATES TAX COURT

DIANA M. PRICE SKORE AND JOSEPH SKORE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5002-05S.              Filed February 18, 2009.

<u>Mark Moktarian</u>, for petitioners.

<u>Kris H. An</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code
(Code) in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Code in effect for the

year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For 2002 respondent determined a $22,615 deficiency and a $4,523 accuracy-related penalty under section 6662(a). Respondent, from third-party payor records, determined that petitioners received and failed to report various items of income[1] for which the Internal Revenue Service (IRS) proposed an adjustment of $139,069 to petitioners' gross income. The parties have filed a "Stipulation of Settled Issues" in which they agree that petitioners received the following income items in 2002:

| Item | Amount |
|---|---|
| Interest Bank of America | $467 |
| Gambling income | 9,600 |
| Interest Toby Skore Survivors Trust | 7,603 |
| Interest William Skore Decedent's Unified Credit Trust (Skore Trust) | 4,645 |
| Business income Skore Trust | 1,033 |
| Capital gain Skore Trust | 116,189 |
| Total | 139,537 |

_____

[1]The notice of deficiency sets forth the following:

| Item | Return Showed | Reported to IRS | Proposed Change |
|---|---|---|---|
| Interest | $468 | $12,715 | $12,247 |
| Capital Gain/ Dividend | 24,824 | 141,013 | 116,189 |
| Small Business | -0- | 1,033 | 1,033 |
| Other Income | 4,004 | 13,604 | 9,600 |
| Total | 29,296 | 168,365 | 139,069 |

The issues remaining for decision are whether petitioners are:  (1) Entitled to offset or reduce with their claimed capitalized expenditures the $116,189 capital gain that passed through the Skore Trust; (2) entitled to offset their gambling losses against their gambling income; and (3) liable for the accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference.  When the petition was filed, petitioners resided in California.

William and Toby Skore, parents of Joseph Skore (Mr. Skore), created the Skore Trust for estate planning purposes.  Mr. Skore's parents transferred their interests in their house (the Sycamore property) to the Skore Trust.  The Skore Trust's beneficiaries include Mr. Skore, his brother, and his sister (who also served as the Skore Trust's trustee).

William Skore passed away in January 2000; Toby Skore passed away in February 2001.  Thereafter, the trustee used the Sycamore property as a rental property.  The trustee sold the Sycamore property in 2002.  The trustee filed a Form 1041, U.S. Income Tax Return for Estates and Trusts, for 2002 and issued Schedules K-1, Beneficiary's Share of Income, Deductions, Credits, etc., to the Skore Trust's beneficiaries.  On the Form 1041, the trustee

reported a $351,666[2] capital gain and equal distribution of the sale proceeds to the Skore Trust's beneficiaries. The trustee did not report expenses for repairs or improvements with respect to the Sycamore property in 2002. Mr. Skore did not seek reimbursement from the Skore Trust or its trustee for any expenditures that he may have made in 2002.

Petitioners timely filed their 2002 Form 1040, U.S. Individual Income Tax Return. Petitioners reported adjusted gross income of $32,772; claimed deductions of $36,837 on Schedule A, Itemized Deductions; and reported zero tax. Petitioners did not claim deductions for the $54,971.16 in expenses that Mr. Skore alleges he paid with respect to the Skore Trust's Sycamore property on their 2002 Form 1040. Petitioners claimed a refund of a $2,348 overpayment for withheld tax. Respondent, however, issued petitioners a notice of deficiency. In response, petitioners filed a timely petition with the Court, seeking redetermination of the deficiency.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error. See Rule 142(a); Welch v.

---

[2] $850,000 (amount realized) - $498,334 (adjusted basis) = $351,666 capital gain.

*Helvering*, 290 U.S. 111, 115 (1933). But the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the taxpayer introduces credible evidence with respect to the issue. See sec. 7491(a)(1). Petitioners have not alleged that section 7491(a) applies; however, the Court need not decide whether the burden shifted to respondent since there is no dispute as to any factual issue. Accordingly, the case is decided by the application of law to the undisputed facts, and section 7491(a) is inapplicable.

II. <u>Mr. Skore's Entitlement To Offset or Reduce the $116,189 Capital Gain by $54,971.16 in Capitalized Expenses</u>

Mr. Skore alleges that he paid the following expenses on behalf of the Skore Trust in 2002:

| Description | Amount |
|---|---|
| Dewey Pest Control | $125.00 |
| Y.G. Painting-LaJolla, Sycamore | 2,420.00 |
| Home Depot-Sycamore | 1,145.97 |
| Thrifty Rooter-LaJolla, South Martel Sycamore, Formosa Ave. | 270.00 |
| Air Affair-plumbing & heating | 90.00 |
| QBI Locksmith-Sycamore | 118.50 |
| "Tashman-Sycamore" | 395.20 |
| Westside Wholesale Elec. & Lighting | 154.00 |
| C.A. Intl. Tile | 26.24 |
| Perfect Floors | 1,890.00 |
| Albee's Disc. Appliance | 310.88 |
| TAG Designs-architectural | 2,500.00 |
| City of L.A. Fin. Tax & Permit Div. | 1,218.54 |
| L.A. Dept. of Bldg. & Safety | 217.19 |
| Orchard Supply-Sycamore | 78.94 |
| Shlomo Ashash-Formosa Ave., Sycamore | 25,975.00 |
| Mini Blinds-Sycamore | 280.70 |
| Hollywood Plumbers-Formosa Ave. | 850.00 |

| | |
|---|---|
| Gardner-Sycamore, Formosa Ave. | 1,650.00 |
| Additional work various props. | 15,255.00 |
| Total | [1]54,971.16 |

[1]The Court notes that the expenses appear to be repairs; i.e., expenditures made for the purpose of keeping the property in an ordinarily efficient operating condition, see Ill. Merchs. Trust Co. v. Commissioner, 4 B.T.A. 103, 106 (1926), rather than capital expenditures that are made for permanent improvements or betterments made to increase the property's value or substantially prolong its useful life, see secs. 1.162-4, 1.263(a)-1, Income Tax Regs.

Mr. Skore claimed $81,938.34 in expenses. The Court has reduced that figure to $54,971.16 by the following unrelated personal expenses, see sec. 262(a):

| Description | Amount |
|---|---|
| Country Villa-boarding Toby Skore | $605.00 |
| Hancock Park-boarding Toby Skore | 174.18 |
| Care Toby Skore Jan. 1 to Feb. 6 | 6,000.00 |
| "Ex. B" various nursing/care[1] | 3,422.00 |
| "Ex. C" various prescription[1] | |
| drugs/medical services | 16,766.00 |
| Total | 26,967.18 |

[1]Although petitioners did not claim nor prove entitlement to deductions for these expenditures, they might have qualified as medical expenses under sec. 213(a) subject to the definition of a dependent in sec. 152, the 7.5-percent floor, and reductions for the amounts that Mr. Skore received to reimburse him for the care of his parents.

Mr. Skore testified that the $26,967.18 amount related to the care of his parents and that he did not know "why it was there."

Petitioners argue that Mr. Skore held an equitable interest in the Skore Trust's property, and since Mr. Skore paid expenses to improve the Skore Trust's property, which was eventually sold,

Mr. Skore should be able to offset his share of the passed-through capital gain with his capitalized expenses "in the fairness of justice." He is not asking for an "ordinary deduction of $60,000 [but rather he is] reducing the capital gain at 28 percent by the capitalized item."

It is oft repeated that State law determines the nature of property rights, while Federal law determines the appropriate tax treatment of those rights. United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985); Aquilino v. United States, 363 U.S. 509, 513 (1960). Pursuant to California law, legal title to a trust's assets vests, generally, in the trustee while the equitable or beneficial interest in the trust's assets vests in its beneficiaries. See Title Ins. & Trust Co. v. Duffil, 218 P. 14 (Cal. 1923); Reagh v. Kelley, 89 Cal. Rptr. 425, 436 (Cal. Ct. App. 1970). The Court concludes that Mr. Skore held an equitable interest in the Skore Trust's assets under California law. Federal law nonetheless precludes petitioners from using the expenditures either as an "offset" against or as a reduction from Mr. Skore's share of the passed-through capital gains.

As a general rule, a trust is a taxpayer separate and apart from its beneficiary for Federal income tax purposes. United States v. Norton, 250 F.2d 902, 905 (5th Cir. 1958). On that premise, the Federal courts have disallowed deductions, offsets, or reductions for trust expenditures claimed by a trust's

beneficiaries--whether the expenditures were capital or noncapital. For example, in United States v. Norton, supra, the beneficiary sought to deduct payments that he made for interest accrued on the trust's income tax deficiency before and after the trust's termination. The Court of Appeals for the Fifth Circuit held that the beneficiary was not entitled to deduct the interest accrued before the trust's termination because the obligation was not imposed upon the beneficiary; rather, the indebtedness was an obligation of the trust. Id. at 905-906.

In Erdman v. Commissioner, 315 F.2d 762 (7th Cir. 1963), affg. 37 T.C. 1119 (1962), the beneficiary claimed a deduction for legal expenses paid by the trust to determine the owner of the trust's property, i.e., a capital expenditure, for which the trustee had failed to claim a deduction. The court disallowed the deduction. It reasoned that a taxpayer could not claim a deduction for expenses of management, conservation, or maintenance of property held for the production of income unless the expenses were those of the taxpayer. Id. at 765. There, the expenses were capital expenditures of the trust, not of the beneficiary. Id.

Similarly, in Herter v. Commissioner, T.C. Memo. 1961-19, the estate's beneficiary sought to deduct certain travel expenses that she paid in connection with the administration of her husband's estate. The Court stated that even if the travel

expenses constituted ordinary and necessary expenses of the estate, they were not deductible by the beneficiary because the estate of a decedent is an entity separate from its heirs under the Federal tax law. Id.; see also Goelet v. United States, 266 F.2d 881, 883 (2d Cir. 1959) (beneficiaries and trustees of the decedent were entitled to refunds of Federal income taxes they paid on account of the trustees' failure to deduct certain repair expenses from the trust's distributable income because the trustees proved that they were entitled to the deductions).

Lastly, in Mellott v. United States, 257 F.2d 798 (3d Cir. 1958), the estate's beneficiaries claimed the estate's 1950 net operating loss on their 1949 individual returns and sought refunds of the resulting overpayments. The court disallowed the loss. The taxpayers did not point to any relevant provision but rather asserted equitable arguments--fair treatment of the estate and its beneficiaries. The court explained that "equitable considerations cannot prevail in allowance of deductions", id. at 801, because whether a deduction is permissible depends upon legislative grace and a taxpayer must "'point to an applicable statute and show that he comes within its terms'", id. at 800-801 (quoting New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934)). The court explained further that a loss may be claimed only by the taxpayer who sustained the loss. Id. at 801. There, the loss was sustained by the estate, not its beneficiaries.

The Skore Trust is an entity separate and apart from its beneficiaries. The Skore Trust was required to take into account its income items and expenditures (whether capital or otherwise) under its accounting method. See secs. 641(b), 643. Its beneficiaries were required to take into account their share of the passed-through income items and allowable deductions or credits. See secs. 643(a), 652, 662. The Skore Trust did not deduct the Sycamore property's "ordinary and necessary expenses", if any, see sec. 162, or capitalize the Sycamore property's capital expenditures, if any, into its basis, see secs. 263, 1016(a)(1).[3] Because the Skore Trust failed to account for the expenditures, these items were not reflected in the beneficiaries' allocable shares of distributable net income. Thus, petitioners are not entitled to offset or reduce their share of the passed-through capital gain by the expenditures that were not taken into account by the Skore Trust. See secs. 643(a), 652, 662.

Moreover, petitioners have pointed to no Code provision (or any other authority) allowing a beneficiary to use a trust's expenses to offset or reduce the beneficiary's share of the passed-through items of income or gain where the trust failed to take its items into account under its accounting method. See

_____

[3]Had the trustee taken the expenditures into account, the Skore Trust and its beneficiaries would have had lower income tax liabilities.

Erdman v. Commissioner, supra. Petitioners' equitable arguments do not prevail upon the Court. See Mellott v. United States, supra at 801. Therefore, petitioners are not entitled to use the expenditures Mr. Skore made on behalf of the Skore Trust as an offset against or a reduction from his share of the passed-through capital gain. Respondent's determination is sustained.

III. Gambling Losses

As is relevant here, section 165(a) and (c) allows individuals a deduction for gambling losses incurred in the trade or business of gambling or in a transaction entered into for profit. Gambling losses are allowed only to the extent of the gains from wagering transactions. Sec. 165(d). But gambling losses are allowed only if substantiated. See Hardwick v. Commissioner, T.C. Memo. 2007-359; Lutz v. Commissioner, T.C. Memo. 2002-89; Rev. Proc. 77-29, sec. 1, 1977-2 C.B. 538, 538 ("The purpose of this revenue procedure is to provide guidelines to taxpayers concerning the * * * responsibility for maintaining adequate records in support of [gambling] winnings and losses."); see also sec. 6001 (a taxpayer must keep records sufficient to establish the amounts of the items required to be shown on his Federal income tax return).

Mr. Skore claims that he had gambling losses to offset or reduce his gambling income. He testified: "I have some records [of my gambling losses] and we're going back many, many years ago

and unfortunately I don't know where they are now, so I couldn't produce anything." He also testified that the casino keeps track of gamblers' losses, but the casino does not allow anyone to take the casino's records. On cross-examination Mr. Skore testified: "I know they keep track of my time [with my player's card, but track] of my losses, * * * no, I don't know." According to Mr. Skore, his gambling losses for 2002 were around $15,000 to $20,000.

Petitioners have provided no evidence to substantiate the gambling losses other than Mr. Skore's testimony. The Court does not accept his uncorroborated, self-serving testimony. See <u>Urban Redev. Corp. v. Commissioner</u>, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). Accordingly, the Court holds that petitioners are not entitled to offset the gambling winnings with the purported gambling losses. Respondent's determination is sustained.

IV. <u>Accuracy-Related Penalty</u>

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that it is appropriate to impose the penalty. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer

must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of reasonable cause, substantial authority, or a similar provision.  Id.

In pertinent part, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to:  (1) Negligence or disregard of rules or regulations; or (2) a substantial understatement of income tax.[4]  Section 6662(c) defines the term "negligence" to include "any failure to make a reasonable attempt to comply with the provisions of this title," and the term "disregard" to include "any careless, reckless, or intentional disregard."  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) is an exception to the section 6662(a) penalty:  no penalty is imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith.  Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith.  The most important factor is

---

[4]Because the Court finds that petitioners were negligent or disregarded rules or regulations, the Court need not discuss whether there is a substantial understatement of income tax.  See sec. 6662(b); Fields v. Commissioner, T.C. Memo. 2008-207.

the extent of the taxpayer's effort to assess his proper tax liability.  Id.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer."  Id.

Petitioners conceded that they received and failed to report Mr. Skore's gambling income and his share of the Skore Trust's passed-through capital gain.  Mr. Skore did not properly substantiate his gambling losses as required by the Code and the regulations.  In addition, petitioners have pointed to no Code provision allowing petitioners to offset or reduce Mr. Skore's share of the Skore Trust's passed-through capital gain by the expenditures he made with respect to the Skore Trust's assets.

The Court finds that respondent has met his burden of production, petitioners were negligent, and they did not establish a defense for their noncompliance with the Code's requirements.  Respondent's determination is therefore sustained.

To reflect the foregoing,

Decision will be entered

for respondent.